UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

RICHARD HOFFER,

                        Plaintiff,                        **DECISION AND ORDER**

   -against-                                      18 Civ. 1197 (AEK)

POLICE OFFICER ELYSSA TELLONE,
SHIELD # 730387; POLICE OFFICER TREVOR
GOFF, SHIELD # 731915; POLICE OFFICER
LAMONT BROWN, SHIELD # 734149; and
POLICE OFFICER DARCY DRUMMOND,
SHIELD # 731907,

                        Defendants.
------------------------------------------------------------------x

**ANDREW E. KRAUSE, United States Magistrate Judge**

      Plaintiff Richard Hoffer ("Plaintiff") brought this action against Defendants Police Officers Elyssa Tellone, Trevor Goff, Lamont Brown, and Darcy Drummond (collectively, "Defendants"), asserting claims pursuant to 42 U.S.C. § 1983 for the alleged violation of his Fourth Amendment right to be free from the use of excessive force and for Defendants' alleged failure to intervene to prevent and/or stop the use of excessive force. The trial commenced on December 1, 2021, and on December 8, 2021, the jury returned a verdict in favor of all Defendants on both claims. ECF No. 99. Currently before the Court is Plaintiff's "motion for a directed verdict" against Officer Goff as to the claim against him for use of excessive force. *See* ECF No. 100 ("Mem. in Supp."). Plaintiff argues that the Court "should set aside the excessive force jury verdict in [D]efendant Goff's favor and enter a verdict on [P]laintiff's behalf and either set a date for [a] compensatory damage trial or award plaintiff nominal damages." Mem. in Supp. at 3. For the reasons that follow, Plaintiff's motion is DENIED.

**I.     Legal Standard**

Plaintiff's motion is labeled as a "Motion for Directed Verdict," a framing that is generally understood to be a request for relief pursuant to Rule 50 of the Federal Rules of Civil Procedure.  *See* Advisory Committee Notes to Rule 50—1991 Amendment (explaining that this revision of Rule 50 "abandons the familiar terminology of *direction of verdict*" and that such a motion should be referred to instead as a motion for judgment as a matter of law (emphasis in original)).  Rule 50(b) of the Federal Rules of Civil Procedure permits the filing of a motion for judgment as a matter of law no later than 28 days after the entry of judgment.  But a party may file a Rule 50(b) motion only if the Court previously denied that party's motion for judgment as a matter of law made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 50(a) (requiring that an initial motion for judgment as a matter of law be made "at any time before the case is submitted to the jury"); *see* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), . . . the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." (emphasis added)).  Because Plaintiff here did not make a Rule 50(a) motion at any point during the trial, he cannot now make a Rule 50(b) motion post-trial.  *See Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 430 (E.D.N.Y. 2003) ("It is undisputed that [the plaintiff] failed to move for judgment as a matter of law before submission of the case to the jury.  Thus, the plaintiff may not post-verdict seek the benefit of a judgment as a matter of law under Rule 50(b)." (quotation marks and citation omitted)).  Accordingly, the

pending motion will be treated as a motion for a new trial pursuant to Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure.[1]

As set forth in Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party [] after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). For a district court to order a new trial pursuant to Rule 59(a), it must conclude that the jury "reached a seriously erroneous result" or that "the verdict is a miscarriage of justice." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (quotation marks omitted).

A motion for a new trial pursuant to Rule 59 may be granted "even when there is evidence to support the jury's verdict." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 456 (2d Cir. 2009); *see Manley*, 337 F.3d at 244-45 ("a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict," and "a trial judge is free to weigh the evidence himself [or herself], and need not view it in the light most favorable to the verdict winner") (quotation marks omitted). But a court "should only grant such a motion when the jury's verdict is egregious," and "should rarely disturb a jury's evaluation of a witness's credibility." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (quotation marks omitted); *see Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 558-59 (S.D.N.Y. 2010) ("In weighing the evidence, . . . the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility") (quotation marks omitted).

The Court assumes the parties' familiarity with the facts of this case and does not recite them here except as necessary to resolve the motion.

---

[1] Despite the terminology used by Plaintiff in the motion papers, the case law and legal standards cited by Plaintiff are those applicable to a motion pursuant to Rule 59.

## II.     Analysis

Plaintiff claims that no reasonable juror could have found that Officer Goff did not use excessive force against Plaintiff.  The Court disagrees.

At trial, Plaintiff and Officer Goff testified and provided entirely different accounts of the moments immediately leading up to Plaintiff's arrest.  Plaintiff conceded that he led Yonkers Police Department ("YPD") officers on a high-speed car chase; at the conclusion of the chase, according to Plaintiff, he exited his vehicle and was struck by a YPD police car, which caused him to be propelled through the air.  Plaintiff claimed that he never attempted to flee from the police when the vehicle he had been driving came to a stop, and did not resist arrest in any way, in part because he was largely incapacitated by the injuries he allegedly sustained from being struck by the YPD vehicle.  In contrast, Officer Goff testified that when Plaintiff's vehicle stopped, Plaintiff exited the vehicle and began running in the direction of a wooded area adjacent to the parkway exit ramp.  He further testified that he pursued Plaintiff on foot and ultimately deployed his Taser two times in an effort to take Plaintiff into custody.  Officer Drummond, who was Officer Goff's partner on November 20, 2016, also testified that he was involved in the apprehension of Plaintiff after Plaintiff fled from his vehicle; this testimony generally was consistent with Officer Goff's account.  Officers Tellone and Brown were not directly involved in placing Plaintiff under arrest after the conclusion of the car chase, though they also testified that they did not see Plaintiff get struck by any YPD vehicle after he exited the vehicle he had been driving.

As part of his case-in-chief at trial, Plaintiff introduced Exhibit 2, *see* ECF No. 100-1, a document that reflects communications between YPD officers and YPD dispatchers regarding the events preceding and following Plaintiff's arrest on November 20, 2016.  As indicated in the

4

document and in trial testimony, there is a line in Exhibit 2 that reads "10-23 [two] in custody"; the "10-23" notation is a shorthand code indicating that the situation at the scene was under control. According to Exhibit 2, a YPD officer communicated a "10-23" to the YPD dispatcher at 19:57:16, *i.e.*, 7:57:16 p.m.

Meanwhile, Defendants introduced Exhibit B, *see* ECF No. 100-2, a usage report for the Taser device that Officer Goff was using on November 20, 2016, which recorded the times and durations of certain activity involving the device on the night in question. Exhibit B indicates that the Taser was triggered at 20:02:44, *i.e.*, 8:02:44 p.m., for a period of five seconds, and returned to "safe" mode at 20:02:51, *i.e.*, 8:02:51 p.m. Officer Goff testified that he deployed his Taser twice, before Plaintiff was in custody, as part of his efforts to apprehend Plaintiff. He explained that the first deployment of the Taser was not successful, even though it caused Plaintiff to fall to the ground, because the Taser prongs did not attach to Plaintiff's body. Officer Goff testified that because Plaintiff continued to resist arrest while on the ground, he executed a "drive stun" maneuver using the Taser as part of his efforts to arrest Plaintiff. Only the second of these Taser deployments is reflected in Exhibit B.

In addition, the jury had multiple opportunities to watch and listen to video and audio generated by the Taser device when Officer Goff deployed the Taser for the "drive stun" maneuver. Plaintiff argues in his motion papers that the video shows Officer Goff using the Taser after Plaintiff "was under arrest and in custody." Mem. in Supp. at 2. In his opposition submission, Officer Goff maintains that the video shows Plaintiff's arms/hands in front of him, underneath his body, as opposed to behind his body in handcuffs. Therefore, according to Officer Goff, the Taser video "demonstrates that [P]laintiff was not in custody when Officer Goff drive stunned him." ECF No. 103 at 3. The Taser video and audio introduced in evidence

5

at trial was brief and loud, and showed a chaotic encounter that was difficult to clearly parse, even with multiple viewings, and despite Plaintiff's counsel's efforts to slow down the recording and review it piecemeal with the jury.

* * * * * * * * * *

Plaintiff's argument in this motion is straightforward: because the timestamps from the YPD dispatcher log and the Taser usage report appear to indicate that the Taser was deployed five minutes *after* the "10-23" call indicating "[two] in custody," the deployment of the Taser by Officer Goff—purportedly after Plaintiff was already in custody—was necessarily an application of excessive force in violation of the Fourth Amendment.

A more holistic consideration of the evidence introduced at trial, however, makes it impossible for the Court to conclude that the jury "reached a seriously erroneous result" or that "the verdict is a miscarriage of justice." *Manley*, 337 F.3d at 245.  The timestamps in Exhibit 2 and Exhibit B contributed to a viable theory of liability for Plaintiff to present to the jury, and Plaintiff's counsel did so, emphasizing the apparent timing discrepancy both in the presentation of evidence and in closing argument.  But there were any number of colorable reasons why the jury may have chosen to reject Plaintiff's desired interpretation of the evidence.  Among other things, there was no testimony as to which of the many YPD officers who were at the scene transmitted the "10-23" to the dispatcher, nor any evidence offered as to specifically what the communicating officer was able to observe at that particular moment regarding the efforts to arrest Plaintiff and Vishal Rai.[2]  It was therefore not clear whether the "10-23" communication

---

[2] Mr. Rai, who also testified at the trial, was the other individual who was arrested on November 20, 2016 as part of the events that gave rise to this lawsuit.  Based on the testimony of Mr. Rai and multiple Defendant YPD officers, there was no dispute that Mr. Rai did not attempt to flee from the vehicle after it came to a stop; Mr. Rai was placed under arrest in close proximity to the vehicle.

of "[two] in custody" accurately reflected the status of the YPD's efforts to arrest Plaintiff on November 20, 2016.  There also was no evidence offered at trial regarding whether the Taser equipment and the YPD dispatcher communication system are calibrated to ensure that they show the same times, either with respect to the specific Taser device used by Officer Goff on November 20, 2016, or in general.  Thus, it was not clear whether the "10-23" call actually occurred five minutes before the recorded Taser deployment, or whether there may have been a discrepancy in the timekeeping systems that could have accounted for the sequencing reflected in the documents.

      Perhaps most importantly, the jury had before it the video of the Taser deployment—which it viewed multiple times—and the testimony of numerous witnesses who gave markedly different accounts of what transpired during the course of Plaintiff's arrest.  As the parties' respective arguments in connection with this motion demonstrate, different interpretations of the video are possible; one plausible understanding of the video is that Plaintiff's hands were not in handcuffs at the time that the Taser was deployed, and that he was continuing to struggle with law enforcement officers.  Moreover, while Plaintiff's testimony, if credited by the jury, may have supported a finding that the force used by Officer Goff was not "objectively reasonable in light of the facts and circumstances," *Chamberlain v. City of White Plains*, 960 F.3d 100, 113 (2d Cir. 2020), the testimony of Officer Goff and Officer Drummond, if credited by the jury, certainly could have supported the jury's determination that Officer Goff's deployment of the Taser did not constitute an excessive use of force.

      In light of all of these factors, the Court cannot conclude that the jury's verdict in this case was egregious.  Plaintiff's renewed arguments regarding the timing of events, as reflected in Exhibit 1 and Exhibit B, do not provide a sufficient basis for the Court to disturb the jury's

evaluation of the evidence and assessment of the witnesses' credibility with respect to Officer Goff's use of the Taser during the course of Plaintiff's arrest. *See DLC Mgmt. Corp.*, 163 F.3d at 134.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a directed verdict (ECF No. 100) is DENIED.

Dated: June 10, 2022
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge